**KLOCKNER–HUMBOLDT–DEUTZ AK-TIENGESELLSCHAFT, KOLN, Plaintiff,**

v.

**HEWITT–ROBINS DIVISION OF LITTON SYSTEMS, INC., Defendant.**

**Civ. A. No. 78–967.**

United States District Court,
D. South Carolina,
Columbia Division.

July 14, 1978.

Douglas McKay, Jr., Julius W. McKay, Columbia, S. C., William C. Stueber, Wil-

liam J. Morris, Joseph N. Stella, Chicago, Ill., for plaintiff.

Harry L. Goldberg, Stanley H. Kohn, Columbia, S. C., M. Michael Carpenter, Beverly Hills, Cal., Morris I. Pollack, Passaic, N. J., Thomas O. Kloehn, Milwaukee, Wis., for defendant.

## ORDER

CHAPMAN, District Judge.

The plaintiff, Klockner-Humboldt-Deutz Aktiengesellschaft, Koln, hereinafter designated as KHD, seeks to enjoin the defendant, Hewitt-Robins Division of Litton Systems, Inc., hereinafter designated HR, from advertising, manufacturing or selling a certain cone crusher alleged to have been built by the defendant using certain trade secrets of the plaintiff.

This action was originally filed on June 14, 1978, and this Court issued a Temporary Restraining Order and Rule to Show Cause on June 15, 1978, which temporarily restrained defendant, its officers, agents, servants, employees, attorneys and others in active concert or participation with it from making disclosures of the drawings or other technical information concerning the 1300mm cone crusher which defendant is currently advertising and offering for sale; from soliciting or accepting orders for the said cone crusher, from manufacturing or having manufactured said 1300mm cone crusher and from otherwise advertising in any manner said cone crusher for sale.

At the same time the Court set a hearing on the Rule to Show Cause as to why an injunction *pendente lite* should not be issued for Friday, June 23, 1978. However, due to the trial of a protracted case it was impossible to hear the motion at the appointed time, and on June 23 the Court extended the Temporary Restraining Order for an additional ten days, because the matter could not be heard sooner due to the July 4 holiday and the Judicial Conference of the Court of Appeals for the Fourth Circuit.

In the extension order of June 23 the plaintiff's bond was increased from $50,000 to $250,000.

The matter was heard by the Court on July 6 and 7 and 10. Seven witnesses testified and numerous and voluminous exhibits were introduced and have been considered by the Court. The complaint alleges that in 1969 the plaintiff and defendant entered into negotiations concerning a manufacturing license to be granted by the plaintiff to the defendant for the manufacture of plaintiff's CALIBRATOR ™ cone crushers in the United States. At the beginning of these negotiations the representatives of defendant were required to execute secrecy agreements because of the confidential nature of the information to be discussed and the plaintiff's claim that its cone crusher contained numerous trade secrets. In February 1973 the parties entered into an agreement under which plaintiff transmitted to defendant certain engineering drawings and other technical know-how and information concerning its 1200mm and 1300mm CALIBRATOR ™ cone crushers so that defendant could manufacture a 1300mm CALIBRATOR ™ and sell the same on an exclusive basis in the United States and Canada.[1]

Thereafter defendant, using the information and trade secrets furnished by the

---

1. On the second day of the hearing the Court called to the attention of the attorneys the arbitration clause of the agreement. This is contained in Article XV and provides in effect that all disputes arising in connection with the agreement shall be settled by arbitration in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce, and the arbitration shall be held in Zurich and the Chairman of the Arbitration Court shall be a Swiss Federal Judge. Shortly after the Court brought this to the attention of the attorneys, defense counsel moved to transfer the case to Switzerland for arbitration. However, the Court finds that arbitration would be an inadequate remedy in the present case due to the press of time and the need for the equitable and preventive remedies peculiar to this court and not available in arbitration. There is also an inclusion in the complaint of certain causes of action sounding in tort which could not be properly decided before a Board of Arbitration.

plaintiff, manufactured three cone crushers and sold them under the name of Hewitt-Robins/Humboldt CALIBRATOR ™. The defendant was to pay a royalty on each machine. On November 7, 1977, plaintiff terminated the license agreement with defendant by giving notice as required under the terms of the agreement. The grounds for such termination were covered by § 17.6 which required defendant to pay certain license fees of a guaranteed minimum amount, which amount graduated up to an annual payment of $60,000 due for the fiscal year ending July 31, 1977, and each following fiscal year thereafter. Since defendant had not generated sufficient business to produce license fees of this amount, plaintiff terminated said agreement.

Thereafter HR began to advertise and market a Hewitt-Robins 1300mm cone crusher. The testimony shows that the design of this cone crusher was begun in the summer of 1977, before the license agreement with plaintiff was terminated, and that the Hewitt-Robins cone crusher now being manufactured and sold by defendant incorporates therein and uses in its construction a number of trade secrets, representing proprietary and confidential information, belonging to KHD and protected by the license agreement between the parties. These trade secrets consist of engineering and manufacturing drawings of plaintiff's CALIBRATOR and parts thereof, material lists, information on the drawings relating to allowances, tolerances, surface materials and other manufacturing information.[2]

The testimony shows that HR had previously tried to build a cone crusher without success and that its present cone crusher could not have been developed without several years of additional work in designing, manufacturing and testing except for its use of trade secrets and confidential information belonging to KHD and protected by the license agreement. The agreement provides at 17.10:

In the event of termination of this agreement prior to July 1984, HR and any of its affiliated and subsidiary companies wherein HR directly or indirectly has a controlling interest of at least 50%, shall not manufacture Calibrators for a period of 15 years from the beginning of this agreement or for a period of 5 years from the termination of the agreement whichever is longer.

Defendant argues unsuccessfully that its 1300mm cone crusher is not a CALIBRATOR ™. This is nothing but an exercise in semantics and an effort by the defendant to wrap plaintiff's CALIBRATOR ™ in a different outside cover and call it a Hewitt-Robins cone crusher. Although defendant has made certain revisions to some parts of the machine the evidence is overwhelming that the heart of the machine and most of its integral parts were lifted from the manufacturing drawings supplied to defendant by plaintiff under the licensing agreement and should have been returned to plaintiff at the time of termination. In view of the plain language of the contract defendant does not have the right to appropriate this information to its own use after termination of the agreement.

Not only has HR used plaintiff's trade secrets in the manufacture of the HR 1300mm cone crusher, but has falsely advertised said cone crusher and defendant's prior experience with cone crushers, as evidenced by plaintiff's exhibit 26, which is an advertising piece printed and circulated by defendant in an effort to sell its 1300mm cone crusher. In this advertisement it lists four different "Hewitt-Robins Cone Crusher" installations, one in Wisconsin, one in Georgia, one in Pennsylvania and one in New York. According to the ad, each of these installations utilizes the "Hewitt-Robins Cone Crusher" with good results in different types of stone crushing operations. Aside from the false impression given by this ad that there are four such stone crushers in existence, when in fact there are only

2. The Court finds that no useful purpose would be served at this juncture of the proceedings to give a detailed description of the trade secrets involved because such description is unneces-

sary to the relief sought or the theory on which such relief will be granted which is the breach of the confidential relationship and not the actual disclosure of the trade secrets.

three (one was moved from one of the installations to another), the evidence is undisputed that none of these are "Hewitt-Robins Cone Crushers" and each is a Hewitt-Robins/Humboldt CALIBRATOR™ Cone Crusher. Each was made under the license agreement and is subject thereto and according to § 12.1 of the agreement must be identified in all advertising as "Humboldt-Calibrators" with or without appropriate additional words.

Therefore, defendant has not only violated the confidentiality agreement, used plaintiff's trade secrets and proprietary information, manufactured and sold a cone crusher in violation of the agreement, but has, through the above advertisement, misled the public through deceptive advertisements and failed to give credit to the plaintiff for the CALIBRATORS™ now in place in an effort to improve its standing in the market and damage that of defendant. The advertising by the defendant is indicative of a desire not only to violate the agreement of confidentiality but to trade on plaintiff's good name and good will and thereby unjustly enrich defendant, damage plaintiff and confuse the public.

The Court is well aware that a preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the moving party clearly carries his burden of proof. Without the obvious and intentional effort of the defendant to damage the plaintiff and mislead the public, this case would present a troublesome question on the issue of whether or not to issue an injunction at this stage, since the manufacture and sale of one crusher by defendant to date would probably not support a finding of irreparable injury.[3] This is particularly true since plaintiff contends that its trade secrets are disclosed on its manufacturing drawings and cannot be discovered or understood by inspecting the cone crusher or attempting to "back-engineer" the machine by taking it apart. This contention by plaintiff does not, however, bar

injunctive relief in light of defendant's flagrant breach of faith. This is not an action for infringement, since no patents are involved, but is brought for the protection of trade secrets. These actions have as their foundation a breach of faith or a confidential relationship. See *Franke v. Wiltshek*, 209 F.2d 493 (2nd Cir. 1953), wherein the Court stated the principle as follows:

> . . . Plaintiffs do not assert, indeed cannot assert, a property right in their development such as would entitle them to exclusive enjoyment against the world. Theirs is not a patent, but a trade secret. The essence of their action is not infringement, but breach of faith. It matters not that defendants could have gained their knowledge from a study of the expired patent and plaintiffs' publicly marketed product. The fact is that they did not. Instead they gained it from plaintiffs via their confidential relationship, and in so doing incurred a duty not to use it to plaintiffs' detriment. This duty they have breached. [Citations omitted].

See also *Servo Corporation of America v. General Electric Company*, 393 F.2d 551 (4th Cir. 1968), wherein the Court stated:

> The gravamen in a trade secrets case is a breach of confidence, rather than an infringement of a property right . . . .

In *Clark v. Bunker*, 453 F.2d 1006 (9th Cir. 1972), the Court made a similar observation in footnote 2:

> Liability [in a trade secrets case] is predicated on communication of the secret to the defendant in confidence and disclosure or *unauthorized use* of the information by the defendant. . . . [Emphasis and bracketed material added].

Defendants activities described above clearly indicate a flagrant breach of the confidential relationship between plaintiff and defendant. Plaintiff has clearly carried his burden of proof and the facts thereby shown clearly cry out for the injunctive powers of the court to protect a

---

**3.** HR has sold and delivered only one 1300mm cone crusher since termination of the agreement.

party from damages due to the breach of faith of the defendant.

In *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977), Judge Craven cited *Airport Comm. of Forsyth Co., N. C. v. CAB*, 296 F.2d 95 (4th Cir. 1961), for a statement of the four-pronged test that courts often use in determining whether or not to grant injunctive relief:

"1) Has the petitioner made a strong showing that it is likely to prevail upon the merits?

2) Has the petitioner shown that without such relief it will suffer irreparable injury?

3) Would the issuance of the injunction substantially harm other interested parties?

4) Wherein lies the public interest?"

The Court then states the proper rule to be applied in this circuit as follows:

Thus in this circuit the trial court standard for interlocutory injunctive relief is the balance-of-hardship test. Whenever a district court has before it a Rule 65(a) motion, although it may properly consider the four general factors enumerated in *Airport, see* p. 192 *supra*, it should give them the relative emphasis required by the *Sinclair* rule *Sinclair Refining Co. v. Midland Oil Co.*, 55 F.2d 42 (4th Cir. 1932): The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success. Always, of course, the public interest should be considered.

In employing the balance-of-hardship test of Blackwelder (which is basically a modification of the second and third factors stated in *Airport*), this Court finds that injunctive relief should be granted.

Defendant asserts that it has expended vast sums of money developing its cone crusher and that a balancing of the harm done to the defendant when compared to that which may be caused to the plaintiff indicates that injunctive relief is not appropriate. The Court finds that the balancing of the possibility of harm is in favor of the plaintiff. The defendant knew when it went into the contract that it was going to spend large sums of money and that it was also under a duty to develop and sell the calibrators in sufficient number to produce revenue to the plaintiff equal to or exceeding the minimum required in the contract. Also the record does not disclose that defendant has any backlog of orders waiting to be filled or a large assembly line producing the equipment. The possibility of economic harm to defendant is something it should have considered before it proceeded upon its recent course of activities. It is also obvious from the testimony that irreparable harm will result to the plaintiff if the injunction is not granted in view of the defendant's obvious breach of faith, violation of the terms of the contract, attempts at unjust enrichment and false advertising.

Though the above findings would satisfy the requirements of *Blackwelder*, that Court suggested that the other factors of *Airport*, to wit, likelihood of success on the merits and the public interest, may be considered in the determination, though lesser weight must attach to their consideration. In considering the factors, the decision to grant injunctive relief in the present case is only reinforced. Although it is difficult for a court to make a determination of probability of success by the plaintiff after hearing only three days of testimony and before discovery has been initiated and all of the evidence presented, the Court finds that plaintiff has presented a strong enough case to support this requirement.

Finally, the public interest is in favor of the plaintiff, particularly in view of defendant's false advertising and its efforts to claim sole responsibility for machines made under the licensing agreement.

For the reasons hereinabove set forth the Court finds that injunctive relief in favor of the plaintiff against the defendant is necessary and required.

IT IS, THEREFORE, ORDERED that defendant and its officers, agents, servants, employees, attorneys and those persons in active concert or participation with it, are hereby enjoined, pending the trial of this action, from any and all of the following acts:

(a) Directly or indirectly making disclosures of any of plaintiff's drawings or any drawings of defendant incorporating plaintiff's trade secrets concerning the 1300mm cone crusher which defendant is currently advertising and offering for sale;

(b) Soliciting or accepting orders for the 1300mm cone crusher which defendant is currently offering for sale;

(c) Manufacturing or having manufactured for it the 1300mm cone crusher which defendant is currently offering for sale; and

(d) Advertising in any manner whatsoever the 1300mm cone crusher which defendant is currently offering for sale.

IT IS FURTHER ORDERED that defendant shall forthwith deliver to plaintiff any and all drawings and other documentary material which plaintiff has heretofore furnished defendant under the terms of the license agreement of February 21, 1973 and which have not heretofore been delivered up to plaintiff.

IT IS FURTHER ORDERED that defendant is enjoined from delivery of any additional 1300mm cone crushers which it is presently advertising, which may have heretofore been purchased or ordered by a customer.

IT IS FURTHER ORDERED that the $250,000 bond submitted by the plaintiff in connection with the extension of the Temporary Restraining Order shall remain in full force and effect.

IT IS FURTHER ORDERED that the parties shall begin immediate discovery and such discovery shall terminate 60 days from the date of the filing of this Order. The action shall be advanced on the calendar of the court and tried as soon as possible after the conclusion of the discovery period.

AND IT IS SO ORDERED.