Bruce CUNNINGHAM and Judith Cunningham, individually, Plaintiffs,

v.

DEAN WITTER REYNOLDS, INC., a corporation, John Weaver, Bryant Russell, et al., Defendants.

Civ. No. S–82–105 LKK.

United States District Court, E.D. California.

Nov. 5, 1982.

Lane, Duncan & Lambertson, Stockton, Cal., for defendants.

Robert E. Graham, Griffinger & Levinson, San Francisco, Cal., for plaintiffs.

## ORDER

KARLTON, District Judge.

Plaintiffs JUDITH and BRUCE CUNNINGHAM brought this action for damages against the stock brokerage firm of Dean Witter Reynolds and two of the firm's employees, John Weaver and Bryant Russell. The plaintiffs assert federal claims based on sections 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78o. In addition they assert several claims under California law sounding in fraud, breach of fiduciary duty, negligent misrepresentation, and intentional infliction of emotional distress.

The defendants have moved for an order severing the federal claims from the pendent state law claims, compelling arbitration of the state tort claims, and staying all

further action in this court pending the outcome of that arbitration. The defendants contend that the procedure they suggest is appropriate—if not obligatory—under the provisions of the United States Arbitration Act, 9 U.S.C. § 1, et seq. As I shall explain, the course of action proposed by the defendants is neither mandated by the Arbitration Act nor is it consistent with the purposes and policy of that statute. The defendants' motion must therefore be denied.

The plaintiffs allege that in October, 1979, they opened a securities investment account with Dean Witter Reynolds and that they were induced to do so by the defendants' deceptive and misleading statements concerning the return they could expect on their investment and the safety of that investment scheme. According to the plaintiffs, their reliance on the defendants' representations was profoundly misplaced, for the entire investment was lost.

During the course of this series of transactions the plaintiffs signed a document entitled "Options Trading Agreement." This "agreement" consists of a form drafted and supplied by Dean Witter Reynolds containing eight enumerated provisions. One of those provisions calls for the arbitration of "any controversy . . . arising out of or relating to this agreement or the breach thereof . . . ."[1] It is on the basis of that clause that the defendants now seek an order compelling arbitration.

I assume, for purposes of this discussion, that the arbitration clause in the "Options Trading Agreement" constituted a valid and binding contract to arbitrate disputes between these parties.[2] Proceeding from that premise to the language of the Arbitration Act would lead one to believe (initially, at least) that the court should stay its hand and compel arbitration of the entire dispute, including the federal law claims.

Section 2 of the Arbitration Act, 9 U.S.C. § 2, provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." It seems clear that in this case the disputed arbitration clause is written and appears in a contract evidencing a transaction involving commerce, i.e., a securities transaction. Section 3 of the Arbitration Act, 9 U.S.C. § 3, requires:

> If any suit be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Thus the general mandate of the Arbitration Act applied to the broad scope of the arbitration agreement at issue here would seem to require the court to compel arbitra-

1. The sixth numbered paragraph of the "Options Trading Agreement" provides in full as follows: "Any controversy between us arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange, the American Stock Exchange, the Chicago Board Options Exchange or the National Association of Securities Dealers Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notifi-

cation from you requesting such election, then I authorize you to make such decision in my behalf."

2. The plaintiffs argue strenuously that the printed options agreement is an unconscionable contract of adhesion and thus is unenforceable in its entirety. Moreover, they contend that the two individual defendants are not entitled to arbitration for they are in no sense signatories to the agreement. My disposition of this matter on other grounds obviates the necessity of reaching these issues.

tion and stay proceedings of all the claims before it in this case.

There are, however, certain well-recognized exceptions to the rule established by the Arbitration Act. In particular, the Supreme Court has held that a court could not compel arbitration of claims asserted under section 12(2) of the Securities Act of 1933,[3] despite the existence of an arbitration agreement between the claimant and the defendant broker that was otherwise enforceable under the Arbitration Act. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In *Wilko,* the Court noted the broad language of the Arbitration Act, but focused on the fact that Congress had specifically granted persons asserting federal claims arising under securities law the right to bring those claims in federal court. The Court concluded that:

> Two policies, not easily reconcilable, are involved in this case. Congress has afforded participants in transactions subject to its legislative power an opportunity generally to secure prompt, economical and adequate solution of controversies through arbitration if the parties are willing to accept less certainty of legally correct adjustment. On the other hand, it has enacted the Securities Act to protect the rights of investors and has forbidden a waiver of any of those rights. Recognizing the advantages that prior agreements for arbitration may provide for the solution of commercial controversies, we decide that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for arbitration of issues arising under the Act.

346 U.S. at 438, 74 S.Ct. at 188 (footnote omitted). Unlike the federal claims in *Wilko,* which arose under the Securities Act of 1933, the plaintiffs' claims in the instant case arise under section 10(b) of the 1934 Securities Exchange Act. The 1934 Act, however, contains language identical to that found in the 1933 Act and relied upon

in the *Wilko* opinion. *Compare,* 15 U.S.C. § 78cc *with* 15 U.S.C. § 77n. Accordingly the lower courts have held with fair consistency that agreements to arbitrate claims arising under section 10(b) of the 1934 Act are unenforceable. *See, e.g., Sibley v. Tandy Corp.,* 543 F.2d 540, 543 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *Greater Continental Corp. v. Schechter,* 422 F.2d 1100, 1103 (2d Cir.1970); *Macchiavelli v. Shearson, Hammill & Co.,* 384 F.Supp. 21, 27–28 (E.D.Cal. 1974).

■ Thus it is clear that this court cannot compel the arbitration of the plaintiffs' federal securities claims; indeed, the defendants appear to concede this point. What the defendants do request, however, poses a somewhat different problem: How should the court proceed when asked to compel arbitration of certain clearly arbitrable claims when the presence of other, non-arbitrable claims precludes arbitration of the case as a whole? This problem was of course not addressed by the Supreme Court in *Wilko;* nor, insofar as counsel or this court can discover, has the Ninth Circuit Court of Appeals given any guidance to the district courts as to how to deal with this issue. Two district courts within this circuit have discussed the issue in published opinions, however, and have resolved it in quite different ways. *Macchiavelli v. Shearson, Hammill,* 384 F.Supp. 21 (E.D. Cal.1974); *Milani v. Conticommodity Services, Inc.,* 462 F.Supp. 405 (N.D.Cal.1976). I now turn to those opinions.

*Macchiavelli* involved a claim of violation of section 10(b) of the 1934 Securities Act, a pendent claim for breach of contract and several claims based on various other federal statutes. Plaintiff had signed a "Customer's Margin Agreement" which contained an arbitration clause. Judge MacBride applied the *Wilko* rule to deny defendant's motion to compel arbitration and stay proceedings of the federal securities claim. On the other hand, the court did

---

**3.** 15 U.S.C. § 77*l*(2). That section prohibits false representations made to induce a securi-

ties sale.

compel arbitration and stay proceedings of the breach of contract claim and those federal claims not premised on the Securities Act. In thus ordering the plaintiff to pursue his claims in two separate forums simultaneously, Judge MacBride adverted to "the strong federal policy favoring liberal enforcement of arbitration agreements," 384 F.Supp. at 30, and explained that "[t]he cases dealing with the power of the district court to split the causes of action between the federal court and arbitration have recognized the district court's broad discretion." *Id.* at 31 (citations omitted).

By contrast, the court in *Milani* refused to compel arbitration of the plaintiff's state law tort claims because it found that the arbitrable claims arose out of the same transaction as the plaintiff's non-arbitrable claim pursuant to the Commodity Exchange Act. 462 F.Supp. at 407. That court did, however, rely on *Macchiavelli* to support its assertion that it had "broad discretion in deciding whether to order the common law counts to be arbitrated." *Id.*

Neither *Macchiavelli* nor *Milani* identifies the statutory or doctrinal source for the "broad discretion" that the district courts purportedly possess to resolve the dilemma that those courts faced and that this court now faces. As I shall discuss, at least one circuit is of the opinion that no such discretion exists. *Dickinson v. Heinhold Securities,* 661 F.2d 638 (7th Cir.1981). Moreover, even if this court does have "broad discretion," "[a] judicial exercise of discretion is ex consulto. That is, it should be an informed decision, reached after consultation and in conformance with the general principles of the applicable law." *United States v. Veon,* 538 F.Supp. 237, 243 n. 3 (E.D.Cal. 1982), *citing Pue v. Sillas,* 632 F.2d 74, 78 (9th Cir.1980). Because the cases discussed above do not fully discuss the doctrinal basis for the decisions reached, they provide little guidance as to how this court should exercise the discretion that it presumably possesses.

In an effort at least to explain when and how the court is to exercise its discretion when confronted with a mixed claims issue, the Fifth Circuit has developed an approach which it refers to as the "doctrine of intertwining." *Miley v. Oppenheimer & Co.,* 637 F.2d 318 (5th Cir.1981); *Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). In *Miley,* an investor accused her broker of "churning" her stock in violation of section 10(b) and the fiduciary duty owed the investor under Texas statutes and common law; after a jury trial, the district court entered judgment for the investor. On appeal, the broker argued, inter alia, that the district court should have ordered arbitration of the pendent state claims pursuant to the Arbitration Act and the arbitration provisions of two standard contracts signed by the investor. The Fifth Circuit rejected the broker's argument, relying on the "doctrine of intertwining" espoused in its earlier opinion in the *Sibley* case:

> In *Sibley,* Judge Godbold noted that "when it is impractical if not impossible to separate out non-arbitrable from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over federal securities act claims." Additionally, the court in *Sibley* noted that arbitration should not be ordered where "[a]n arbitrator making a decision on the common law claims would [be] impelled to review the same facts needed to establish the plaintiff's securities law claim."

637 F.2d at 335 (citations omitted). The intertwining doctrine enunciated by the Fifth Circuit provides a sensible explanation as to why the court should have discretion regarding the treatment of mixed claims. More important, by explaining why the discretion should exist, the Fifth Circuit has given us at least an adequate description of the parameters of that discretion. Thus when the intertwining doctrine is applied to the facts of the case at bar, it appears quite clear that the court should exercise any discretion it has to refuse the request for severance and partial arbitration.

All of the claims in this case, as pleaded, derive from exactly the same series of oc-

currences and essentially the same set of alleged wrongful acts by the defendants. In truth, the claims under Rule 10b–5 and the common law breach of duty, fraud, and negligence claims appear to be nothing more or less than compatible theories of liability for the same basic tort, and the claim for infliction of emotional distress appears to be a closely related cause of action. It appears from the complaint that an arbitrator hearing the pendent claims in this case would have to take the same evidence that would be presented to this court in the parallel securities claim litigation, and would have to determine many (if not most) of the same factual and legal questions that would also be presented to this court. Clearly any severance and partial arbitration in this case would be inefficient and duplicative. Moreover, if the court did as the defendants request and stayed its hand pending arbitration of the state claims, the result indeed "could essentially rob the federal court of its exclusive jurisdiction." *Miley v. Oppenheimer & Co.,* 637 F.2d at 336. Thus if this court has the power to deny the defendants' request, it should do so.

This resolution of the problem assumes, however, that the court does in fact enjoy the discretion to refuse to compel arbitration under the circumstances of this case. As I mentioned above, the Seventh Circuit has rejected the doctrine of intertwining on the ground that the Arbitration Act requires the courts to arbitrate otherwise arbitrable claims that are not within the exclusive jurisdiction of the federal courts. *Dickinson v. Heinhold Securities, Inc.,* 661 F.2d 638 (7th Cir.1981). In the *Dickinson* opinion, the court discussed the intertwining approach, and determined that "the decisions of the Fifth Circuit, in particular the decision in *Sibley,* seem not to have given appropriate weight to the federal policies embodied in the Arbitration Act." *Id.* at 645 (footnote omitted). According to the *Dickinson* court, the proper method of reconciling the federal policy in favor of arbitration with the Fifth Circuit's concern that federal courts could be "robbed of jurisdiction" over securities claims is to sever the

pendent claims and compel arbitration of those claims after trial of the federal causes of action. The other concerns raised by the Fifth Circuit were rejected out of hand, and the court concluded:

> In summary, the Arbitration Act requires that we enforce the bargain of the parties as to dispute resolution and not substitute our own views of economy and efficiency. There is no room in the language of the Act, the decisions of the Supreme Court or the decisions of this court for an ad hoc approach, based on speculative considerations of efficiency toward enforcement of arbitration agreements. "[B]ifurcation of the federal and pendent state law claims is the only viable alternative under the present securities and arbitration acts." Krause, *Securities Litigation: The Unresolved Problem of Predispute Arbitration Agreements for Pendent Claims,* 29 De Paul L.Rev. 693, 716 (1980). We hold, therefore, that the district court may not refuse to enforce an agreement to arbitrate because of the joinder of a non-arbitrable claim, even when a bifurcated resolution may result in an assertedly inefficient or delayed resolution of the entire dispute.

*Id.* at 646; *see also, Lee v. Ply Gem Industries, Inc.,* 593 F.2d 1266, 1275 (D.C.Cir. 1979) (per Spottswood Robinson III, J.), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 173 (1979) (reaching substantially the same conclusion as the *Dickinson* court in the context of mixed antitrust and state law claims but without specific discussion of the Fifth Circuit cases).

While the *Dickinson* court fairly criticizes the Fifth Circuit for failing fully to articulate the statutory basis for the discretionary authority asserted in *Sibley* and *Miley,* it appears that the Seventh Circuit is vulnerable to similar criticism. Based on a series of accurate, but quite general, statements regarding the strong federal policy favoring arbitration and the purposes of the Arbitration Act, the Seventh Circuit reaches the conclusion that the Arbitration Act forbids the court to hear arbitrable claims in the

**583**

context of a mixed claims case. In this regard, I am not at all satisfied that either the Fifth or Seventh Circuit has looked closely enough to the Arbitration Act itself; neither court attempted to resolve the problem through a systematic application of the familiar tools of statutory interpretation. Clearly such an attempt is in order. As this court has stated, "with any consideration of statutory construction, consideration 'begins, as indeed it must, with the text and legislative history...'" *United States v. Veon,* 538 F.Supp. at 243, *quoting Busic v. United States,* 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980).

The court in *Dickinson* maintained that "[t]he Act itself provides for a bifurcated resolution of any controversy wherein a particular issue is subject to arbitration." 661 F.2d at 645. The language of 9 U.S.C. § 3, quoted above in its entirety, does not discuss bifurcation at all; certainly it does not specifically compel separate proceedings for each of two sets of claims based on common evidentiary facts and requiring the same factual and legal conclusions for disposition. The statement in section 3 that "[i]f any suit be brought ... upon any issue referable to arbitration ..., the court ... shall ... stay the trial of the action ..." by its plain language appears to refer to suits upon solely arbitrable issues. Indeed, there is some language in the legislative history suggesting that Congress had in mind cases in which only arbitrable claims exist.[4]

Nor does an examination of the purpose stated for enacting the Arbitration Act convince me that I must adopt the Seventh Circuit's rule. In discussing this legislative history the court in *Dickinson* notes:

> The Act was designed "to place arbitration agreements upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 511 [94 S.Ct. 2449, 2453, 41 L.Ed.2d 270] (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924))

... The Arbitration Act was specifically aimed at the historical problems of courts refusing to honor contractual arbitration agreements. The Act was intended to make arbitration agreements specifically enforceable ... upon the terms established by the parties.

661 F.2d at 645 (citations omitted). This interpretation of the Act is correct as far as it goes. It does not follow, however, as the *Dickinson* opinion maintains, that "if the agreement provides for arbitration, the only issues open for consideration of a federal court concern the 'making of the agreement of an agreement to arbitrate' itself." 661 F.2d at 645 (*quoting* section 4 of the Arbitration Act). Congress intended the Act to eliminate "an anachronism in our law" arising from the efforts of jealous English courts to protect their jurisdiction. H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924). The problem Congress intended to rectify was that essentially *no* arbitration agreements could be enforced in a court of law: "With this as the state of the law such agreements were in large part ineffectual and the party aggrieved by the refusal of the other party to carry out the arbitration agreement was without adequate remedy." S.Rep. No. 536, 68th Cong., 1st Sess., 2 (1924). It by no means follows that Congress, in making arbitration agreements enforceable in court, intended that *all* such agreements be blindly enforced whatever the attendant circumstances.

Thus Congress did not specifically address the issue pertinent to the motion now before this court either in the text of the statute or in the accompanying legislative debate. Once again, "in the absence of any other guidance I turn to standard canons of statutory construction." *United States v. Veon,* 538 F.Supp. at 244. Those canons require me next to examine the more general policy goals underlying the Arbitration Act. As the Supreme Court stated in dis-

---

4. In discussing the simplicity of the procedure for federal court enforcement of arbitration agreements under the Act, the House committee said: "If the parties to the arbitration are willing to proceed under it, they need not resort to the courts at all." H.R.Rep. No. 96, 68th Cong., 1st Sess., 2 (1924). Such an assertion clearly cannot be made if suits containing both non-arbitrable and arbitrable claims are contemplated.

cussing another statute: "[w]e cannot, in the absence of an unmistakable directive, construe the Act in a manner which runs counter to the broad goals which Congress intended it to effectuate." *FTC v. Fred Meyer, Inc.,* 390 U.S. 341, 349, 88 S.Ct. 904, 908, 19 L.Ed.2d 1222 (1968).[5]

■ Congress intended the Arbitration Act to overrule the traditional refusal of courts to enforce arbitration agreements under the common law. The policy Congress intended to effectuate in this manner was to avoid the unnecessary expense and delay of litigation where parties had provided for the more efficient process of arbitration:

> It has been said that "arrangements for avoiding the delay and expense of litigation and referring a dispute to friends or neutral persons are a natural practice of which traces may be found in any state of society." The desire to avoid the delay and expense of litigation persists. The desire grows with time and as delays and expenses increase. The settlement of disputes by arbitration appeals to big business and little business alike, to corporate interests as well as to individuals.

S.Rep. No. 536, 68th Cong., 1st Sess., 3 (1924).[6] The *Dickinson* solution to a suit involving non-arbitrable federal securities claims and arbitrable pendent claims ren-

ders effectuation of the expressed congressional policy of saving time and expense of litigation more difficult. The goal is simply not served by bifurcating a unitary lawsuit into two separate proceedings, each of which would likely entail a hearing on the same evidentiary facts and deliberation upon essentially the same factual and legal problems.[7]

The court in *Dickinson* minimized the significance of the efficiency purpose of the Arbitration Act, stating:

> Plaintiff's emphasis on efficiency would also elevate one purpose of the Arbitration Act, the promotion of speedy and efficient resolution of disputes, over the important goal of allowing technical disputes to be resolved by arbitrators with special expertise in the relevant area. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 415 [87 S.Ct. 1801, 1811–12, 18 L.Ed.2d 1270] (1967) (Black, J., dissenting); *Conticommodity Services Inc. v. Phillip & Lion,* 613 F.2d 1222, 1224 (2d Cir.1980); Cohen and Dayton, *The New Federal Arbitration Law,* 12 Va.L. Rev. 265, 268 (1926).

*Dickinson,* 661 F.2d at 646. The *Dickinson* court's assertion, however, itself ignores the reality of the mixed claims situation, at least as it exists in this case. First of all, the solution tendered by that court—a fed-

---

**5.** Judge J. Skelly Wright has expressed this rule of construction somewhat more elegantly: "In determining the legislative intent, our duty is to favor an interpretation which would render the statutory design effective in terms of the policies behind its enactment and to avoid an interpretation which would make such policies more difficult of fulfillment...." *National Petroleum Refiners Association v. FTC,* 482 F.2d 672, 689 (D.C.Cir.1973). *See also Application of the United States,* 563 F.2d 637 (4th Cir.1977).

**6.** The Senate Committee report goes on to quote a New York Times article of May 11, 1924, discussing the accomplishments of the then two year old American Arbitration Society. The article speaks of the "trifling" costs of arbitration compared to litigation expenses and of two or three weeks required to reach a decision versus years in the courts. S.Rep. No. 536, 68th Cong., 1st Sess., 3 (1924).

**7.** By raising the spectre of bifurcated proceedings, the *Dickinson* solution also creates an incentive for plaintiffs to drop one set of claims in order to obtain speedier justice. The court's analysis has assumed plaintiffs typically drop neither set but continue with bifurcated proceedings. In reality some plaintiffs can be expected to drop their pendent common law claims, and to proceed only with the federal action in order to speed collection on the judgment. As Judge Goldberg pointed out in *Miley,* this violates the policy of pendent jurisdiction. It is also conceivable that some plaintiffs would drop their federal cause of action, hoping for faster and cheaper results through arbitration. This would defeat the purpose of exclusive federal jurisdiction for cases arising under the federal securities laws. *Miley v. Oppenheimer,* 637 F.2d at 335–37. The Seventh Circuit acknowledged this point but gave it no weight in the decision because the plaintiff had not raised it in that case. *Dickinson v. Heinhold Securities,* 661 F.2d at 644 n. 13.

eral court trial followed by arbitration—would almost assuredly mean that any technical issues that could arise would do so at trial; thus the court's ruling would effectively preempt any application of expertise by the arbitrator. Secondly, it is not clear that technical expertise is particularly critical in this case, although it may well be helpful. The essential factual allegations of the plaintiff's complaint are that the defendants misrepresented the anticipated rate of return and the safety of the investment, and that the plaintiffs were induced thereby to undertake that investment. On its face, the factual dispute is certainly not substantially different from the sort of fraud claim that courts are called upon to decide every day. Finally, I note in passing that the authorities cited by the *Dickinson* court scarcely support the proposition for which they are cited. In particular, at the cited passage in his *Prima Paint* dissent, Justice Black quotes the Cohen & Dayton article in part as follows: " 'Not all questions arising out of contracts ought to be arbitrated. It is a remedy peculiarly suited to the disposition of the ordinary disputes between merchants as to questions of fact —quantity, quality, time of delivery, compliance with terms of payment, and the like .... [12 Va.L.Rev. at 281].' " 388 U.S. at 415 n. 13, 87 S.Ct. at 1812 n. 13.

I conclude that neither the language of the Arbitration Act nor the legislative history mandates the court to compel arbitration in this case. Congress intended to open an avenue for cheaper and faster settlement of disputes by making agreements to arbitrate enforceable in federal courts. Congress did not intend that court action on *all* arbitrable claims, regardless of their interconnection with non-arbitrable claims must be stayed and those claims submitted to arbitration. In this case the congressional goal of avoiding litigation where arbitration would be cheaper and faster would be disserved if the court were to bifurcate the proceedings and compel arbitration of the pendent claims. Accordingly, the defendants' motion to compel arbitration of pendent state law claims and stay all further court proceedings is hereby DENIED.

IT IS SO ORDERED.