Clarance B. DICKINSON,[a]
Plaintiff-Appellee,

v.

HEINOLD SECURITIES, INC.,
Defendant-Appellant.

No. 80–2202.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1981.

Decided Oct. 6, 1981.[b]

---

a. After several false starts, the parties appear to have settled on this spelling of plaintiff's name.

b. Pursuant to Circuit Rule 16(e), this opinion has been circulated among all of the active judges of the court. No judge requested a rehearing *en banc*.

William J. Nissen, Chicago, Ill., for defendant-appellant.

Walter E. Trittipo, Jr., Speckman & Trittipo, Ltd., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Circuit Judge, GIBSON, Senior Circuit Judge,[c] and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

Defendant Heinold Securities, Inc. ("Heinold") appeals from the order of the district court denying defendant's motion for a stay of these proceedings pending arbitration and its motion to compel arbitration on selected counts of the complaint.[1] We reverse and remand for further proceedings.

Plaintiff is a former client of the defendant's stock options brokerage service. Plaintiff opened his account with Heinold in September of 1975. The agreement between the parties gave Heinold a limited discretionary power to trade plaintiff's account on the Chicago Board Options Exchange ("CBOE") in accordance with certain pre-selected strategies. The original agreement between the parties, as well as the subsequent "Options Agreement," contained a clause providing for the arbitration of any future disputes that might arise over the handling of the account.[2]

---

**c.** The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

**1.** The denial of a stay pending arbitration is appealable where, as here, the relevant counts seek legal relief. *C. Itoh & Co. v. Jordon Int'l Co.*, 552 F.2d 1228, 1230 n.2 (7th Cir. 1977).

**2.** The arbitration clauses of the original and subsequent agreements differ slightly in certain immaterial respects. The district court found that the later agreement controlled to the ex-

Plaintiff's account remained open for approximately one year. Plaintiff then withdrew the bulk of his funds in September of 1976 and notified Heinold that he felt that Heinold had failed to trade his account in accordance with the investment strategies set out in the agreement between the parties. On September 24, 1976, plaintiff wrote the CBOE complaining of Heinold's handling of his account.

Considerable time passed while that body investigated the charges.[3] On February 14, 1978, plaintiff wrote Heinold threatening a lawsuit unless a satisfactory settlement was reached before February 26, 1978. Heinold replied by electing to arbitrate the dispute pursuant to the terms of the agreement between the parties. Plaintiff failed to respond and on or about April 10, 1978, Heinold commenced an arbitration proceeding before the Arbitration Committee of the CBOE.

Plaintiff filed the present action three days later and denied that it could be compelled to arbitrate the dispute. Plaintiff's complaint contained two counts. The first count stated in paragraph one that the matters alleged in this count

> give rise to a cause of action under Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. Section 78J, and Rule 10b–5 of the Regulations of the Securities and Exchange Commission.

Additional paragraphs of Count I alleged that Heinold made certain misrepresentations in soliciting the account and traded the account to maximize Heinold's profits from commissions. Under this court's decision in *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831 (7th Cir. 1977) (relying upon *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)), Count I was not arbitrable regardless of the agreement between the parties because of

certain provisions and policies of federal securities law.

The first paragraph of Count II stated that "[a]s for its paragraphs 1 through 11 of this Count II, plaintiff realleges, and incorporates herein by reference, paragraphs 1 through 10 of Count I, above." Count II thus incorporated the above-quoted allegation that the Count stated a cause of action under the federal securities laws. If Count II is construed as stating a claim under the securities laws, *Weissbuch* would bar arbitration of its allegations. Additional paragraphs of Count II alleged that Heinold's conduct violated the agreement between the parties.

Heinold filed an answer to the complaint which denied the pertinent allegations. In particular, Heinold stated as an affirmative defense to *both* Counts that

> [t]he complaint fails to state a claim under Section 10(b) of the Securities Exchange Set [sic] of 1934 or Rule 10b–5 promulgated by the Securities and Exchange Commission. Pursuant to an agreement between the parties, the complaint should be referred to arbitration.[4]

Discovery proceeded rapidly with both parties filing, *inter alia*, interrogatories, requests for admissions and requests for the production of certain documents.

Plaintiff filed an amended four-count complaint on March 29, 1979, which expanded and clarified his earlier allegations. All references to federal securities law claims were consolidated in Count I and clearly labelled as such. Counts II, III and IV alleged various state law tort and contract claims based upon essentially the same facts relevant to the federal claim. Both parties continued with their discovery efforts after the filing of the amended complaint.

---

tent that there were any differences and this finding has not been challenged on appeal.

**3.** Eventually, the Exchange responded in a letter on April 17, 1978, that alerted plaintiff to the availability of the Exchange's arbitration facilities for controversies such as the present one. Plaintiff had already filed this action by that time, however.

**4.** At this point, the Arbitration Committee ruled that it had no jurisdiction to consider Heinold's pending arbitration proceeding because the district court had acquired sole jurisdiction over the controversy.

On April 24, 1979, Heinold moved to stay proceedings on Counts II, III and IV pending arbitration, to stay arbitration pending a judicial resolution of the non-arbitrable securities law claim in Count I and for an order compelling plaintiff to arbitrate Counts II, III and IV. The district court referred these motions to a magistrate. An additional motion, retained by the district court, sought summary judgment on Count I, the non-arbitrable claim. In his Revised Report of December 14, 1979, the magistrate recommended that Counts II, III and IV proceed to arbitration only if Count I was resolved adversely to the plaintiff on Heinold's pending motion for summary judgment. The district court adopted this recommendation. Subsequently, the district court denied the pending motion for summary judgment on Count I and, in accordance with the magistrate's recommendation, retained Counts II, III and IV for a judicial resolution together with Count I. It is from this order denying arbitration on Counts II, III and IV that Heinold appeals.

Three issues are presented by this appeal: 1) Did Heinold waive its right to seek arbitration on Counts II, III and IV?; 2) Does the agreement between the parties provide for arbitration of Counts II, III and IV given their joinder in this action with the non-arbitrable claim in Count I?; and 3) even if contractually required, does the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1976), allow the district court to compel a judicial resolution of otherwise contractually arbitrable claims?

### I.  Waiver

■ Plaintiff identifies several aspects of Heinold's conduct which it argues waived Heinold's right to arbitration of the three state law counts. While arbitration is a waivable contract right, *Howard Hill, Inc. v. George A. Fuller Co.*, 473 F.2d 217, 218 (5th Cir. 1973), a "waiver of arbitration is not lightly to be inferred." *Midwest Window Systems, Inc. v. Amcor Industries, Inc.*, 630 F.2d 535, 536 (7th Cir. 1980). The essential question is whether, under the totality of the circumstances,[5] the defaulting party acted " 'inconsistently' with the arbitration right." *Midwest Window*, 630 F.2d at 537 (quoting *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978)).

■ Plaintiff complains that Heinold waited 18 months after the controversy arose to seek arbitration.[6] This period of delay encompasses some attempts by the parties to settle the dispute; it also encompasses the investigation by the CBOE. When plaintiff indicated that an informal resolution would no longer be possible, Heinold promptly moved for arbitration. Preliminary negotiations concerning a settlement are not sufficient to waive arbitration. *Southwest Industrial Import & Export Inc. v. Wilmod Co.*, 524 F.2d 468, 470 (5th Cir. 1975). Significant periods of delay prior to the onset of litigation are often necessary to allow the parties to engage in good faith efforts to resolve the controversy without reference to an adjudicatory body. Neither the length of the delay nor the interim actions of Heinold were inconsistent with Heinold's arbitration right.

We also find no waiver by Heinold's conduct after plaintiff filed this suit. Plaintiff's original complaint alleged two counts. Plaintiff cites as waiver Heinold's failure to seek a stay pending arbitration of the contract claim in Count II. We agree with the district court, however, that it was reasonable for Heinold to act on the assumption

---

**5.** One of the relevant circumstances is the prejudice to the objecting party from the conduct allegedly constituting a waiver. *Midwest Window*, 630 F.2d at 537.

**6.** Plaintiff asserts that the period of delay exceeds the time specified in the CBOE's own rules regarding the initiation of arbitration. Those rules, however, indicate that the Arbitration Committee may exercise its discretion to hear cases filed after the time limit has expired.

The Arbitration Committee has already indicated that it will review the matter if it is referred to it by the district court. Appendix at 10. In any event, although we do not reach this question, other courts have ruled that the application of such a rule is a matter for the arbitrators and not the courts. *E. g., Conticommodity Services Inc. v. Philipp & Lion*, 613 F.2d 1222, 1225 (2d Cir. 1980).

that Count II stated a non-arbitrable claim under the federal securities laws. Count II expressly incorporated paragraph 1 of Count I which stated a federal law basis for the cause of action.[7] Plaintiff may have intended to allege a contract claim but that is not determinative where plaintiff's original complaint, drafted by counsel, was ambiguous. Given the ambiguity, it is irrelevant that the complaint might eventually have been construed, within the loose strictures of notice pleading, as stating a claim for breach of contract.[8]

Plaintiff's final waiver argument focuses on Heinold's conducting discovery in the district court both before and after plaintiff filed his amended complaint alleging state law claims capable of being arbitrated. Given our view of the original complaint, Heinold's discovery prior to the filing of the amended complaint does not constitute waiver. At that time, Heinold faced only allegations that were reasonably perceived as non-arbitrable, and no waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims.

After the amended complaint was filed, Heinold was clearly on notice that claims capable of being arbitrated were alleged by three of the four counts. Discovery continued nonetheless, however, and with good reason. Plaintiff still alleged a non-arbitrable securities law claim in Count I of the amended complaint. Plaintiff has not argued that the discovery in question was irrelevant to Count I. While this court has noted that discovery efforts on arbitrable claims *may* constitute a waiver of the right to arbitration, *Midwest Window*, 630 F.2d at 537, it is Heinold's right to conduct discovery on any non-arbitrable claims without waiving the right to arbitrate Counts II, III and IV. *Martin Marietta Aluminum, Inc. v. General Electric Co.*, 586 F.2d 143, 146 (9th

Cir. 1978). Admittedly, Heinold's discovery would be helpful to a presentation of the state law claims to the arbitrator but pursuit of such discovery is not sufficient to constitute a waiver in the instant case. Here, Heinold has consistently sought a judicial resolution of Count I *before* any arbitration of the remaining claims. Thus, there can be no argument that Heinold conducted its discovery solely to benefit its position in arbitration with only a distant possibility of using the information to assist in the resolution of the non-arbitrable count.[9] On these facts, we find that Heinold has not waived its right to compel arbitration.

## II. The Duty to Arbitrate Under the Contract

■ There is no present dispute that the state law claims, if viewed in isolation, would be covered by the contractual obligation to arbitrate. Plaintiff maintains, however, that there is no duty to arbitrate under the contract given the need for a judicial resolution of Count I and the substantial duplication of proof required as between Count I and the arbitrable counts. In plaintiff's view, the factual issues present in the non-arbitrable claim substantially "permeate" those found in the arbitrable claims. The magistrate and the district court apparently agreed with plaintiff's conclusion that the contract did not require arbitration where arbitration would necessarily duplicate the process of resolving their non-arbitrable dispute in court. Magistrate's Revised Report and Recommendation, Appendix at 40 n.6.

No attempt has been made, however, to support this argument based on the actual language of the agreement between the parties. This is understandable because the agreement provides no such support. In

---

7. To the same effect, *see* paragraph 10 of Count I as incorporated into Count II.

8. In addition, Heinold's answer sought arbitration if the court found that Count II failed to state a claim under the securities laws. Such a reservation makes it extremely difficult to show waiver. *Hilti, Inc. v. Oldach*, 392 F.2d 368, 371 (1st Cir. 1968). Heinold's attempt to

preserve its alternative defenses in its answer also does not constitute a waiver. *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924 (5th Cir. 1970).

9. We need not decide whether extensive discovery coupled with an attempt to compel arbitration prior to a resolution of the non-arbitrable claims would require a finding of waiver.

unambiguous language, the parties agreed that "[a]ny controversy . . . shall be settled by arbitration." It is axiomatic that the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *United Textile Workers of America v. Newberry Mills, Inc.*, 315 F.2d 217, 219 (4th Cir. 1963), *cert. denied*, 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed.2d 53 (1963). This conclusion follows from the established federal policy that, when construing arbitration agreements, every doubt is to be resolved in favor of arbitration. *Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711, 714 (7th Cir. 1967); *Hanes Corp. v. Millard*, 531 F.2d 585, 598 (D.C.Cir.1976); *Controlled Sanitation Corp. v. District 128 of International Association of Machinists and Aerospace Workers*, 524 F.2d 1324, 1328 (3d Cir. 1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). A requirement to arbitrate may, in a particular instance, result in some duplication of effort, but this prospect cannot vitiate the agreement of the parties.

### III. The Impact of the Federal Arbitration Act

Plaintiff attempts to avoid his contractual obligation to arbitrate Counts II, III and IV by arguing that this court should not enforce that duty when the result would be inimical to the purposes of the Federal Arbitration Act. 9 U.S.C. §§ 1–14 (1976). In plaintiff's opinion, that statute was enacted to provide for the speedy and efficient resolution of disputes through arbitration. Given the duplication of effort (and presumed delay) that would be occasioned by a bifur-cated resolution of the overlapping claims in the instant case, plaintiff argues that this court should, in furtherance of the purposes of the Act, refuse to enforce the arbitration agreement.

Plaintiff's argument is derived from the "doctrine of intertwining," as primarily enunciated in a line of Fifth Circuit cases.[10] *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 334–37 (5th Cir. 1981); *Sibley v. Tandy Corp.*, 543 F.2d 540 (5th Cir. 1976), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). The "doctrine of intertwining" is a judicially created exception to the statutory arbitration scheme. Under this doctrine, when arbitrable and non-arbitrable claims are sufficiently intertwined factually and legally, as appears to be the case here, the district court should deny arbitration as to the arbitrable claims and try all of the claims together in federal court.

Two reasons have been offered to justify this exception to the normally strong federal policy favoring the enforcement of arbitration agreements. First, the court should deny arbitration in order to preserve its exclusive jurisdiction over the non-arbitrable claim. *Sibley*, 543 F.2d at 542–43; *Miley*, 637 F.2d at 336. This argument has its greatest force in cases such as *Sibley, Miley* and the instant case where the non-arbitrable claim has been rendered non-arbitrable because of its relationship with specific federal legislation—here securities regulatory legislation. *See Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).[11] We agree with the Fifth Circuit that a federal

---

**10.** *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1030–31 (6th Cir. 1979); *De Lancie v. Birr, Wilson & Co.*, 648 F.2d 1255, 1258–59 n.4 (9th Cir. 1981) (dicta); *Lane v. Dean Witter Reynolds, Inc.*, 505 F.Supp. 610, 612 (W.D.Okl. 1980) and *Fox v. Merrill Lynch & Co.*, 453 F.Supp. 561, 567 (S.D.N.Y.1978), also appear to endorse the Fifth Circuit's approach. None of these cases analyze the issue in sufficient depth, however, to merit discussion here.

**11.** For other instances in which federal statutory causes of action have been exempted from pre-dispute arbitration agreements, *see, e. g., Beckman Instruments, Inc. v. Technical Development Corp.*, 433 F.2d 55 (7th Cir. 1970), *cert. denied*, 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed.2d 326 (1971) (patent claims); *Applied Digital Technology, Inc. v. Continental Casualty Co.*, 576 F.2d 116, 117 (7th Cir. 1978) (antitrust claims); *Allegaert v. Perot*, 548 F.2d 432, 437 (2d Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977) (bankruptcy claims). Unlike these federal statutory claims, however, there is no federal interest inherent in plaintiff's state common law claims, which would require a judicial resolution in contrast to arbitration. Plaintiff has not argued that his claims invoke any state policies which would be undercut by arbitration. In any event, such an argument could not preempt the coverage of the Federal Arbitration Act. *Romnes v. Bache & Co.*, 439 F.Supp. 833, 839 (W.D.Wis.1977).

court has the sole right to decide the ultimate issues essential to a federal securities law claim. If arbitration of an "intertwined" state claim preceded the federal proceeding, the federal forum might find itself bound through collateral estoppel.

██ But, this threat to the jurisdiction of the federal courts does not justify denying arbitration of otherwise arbitrable intertwined state law claims. *Lee v. Ply\*Gem Industries, Inc.*, 593 F.2d 1266, 1275 (D.C. Cir.), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). Where the non-arbitrable issues substantially permeate the entire case and make it difficult to separate out the arbitrable issues, the district court has discretion to *stay* arbitration pending a judicial resolution of the non-arbitrable claims.[12] *Applied Digital Technology, Inc. v. Continental Casualty Co.*, 576 F.2d 116, 117 (7th Cir. 1978). By controlling the order of the two adjudications, a procedure certainly within the power of the district court, *Lawson Fabrics, Inc. v. Akzona*, 355 F.Supp. 1146, 1151 (S.D.N.Y.), *aff'd mem.*, 486 F.2d 1394 (2d Cir. 1973), the district court can preserve its full authority to decide the non-arbitrable federal issues without any collateral estoppel consequences from a prior arbitration. As the District of Columbia Circuit has pointed out, however, the permeation or intertwining doctrine provides "no authority for the ruling that . . . arbitrable claims become subject to adjudication in court merely because they are related to non-arbitrable claims." *Ply\*Gem*, 593 F.2d at 1275. Permeation merely permits controlling the order of the two adjudications. *Id.*

The remaining justification asserted for the intertwining doctrine is efficiency. If arbitration is stayed pending the judicial resolution of intertwined securities claims,

plaintiffs will be required to duplicate some portion of their efforts in order to pursue their arbitrable claims. But we do not feel that duplication of effort, insofar as we have perceived it, is sufficient to destroy the right to arbitration. If there is a bench trial, detailed findings of fact, Fed.R.Civ.P. 52(a), should eliminate much of the duplication through the impact of collateral estoppel on the subsequent arbitration. *See Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 412, 96 S.Ct. 3141, 3149, 49 L.Ed.2d 1022 (1976); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 456 F.Supp. 85, 96 (E.D.N.Y.1978); *Stockwell v. Reynolds & Co.*, 252 F.Supp. 215, 220 (S.D.N.Y.1965). If plaintiffs seek a jury trial, a special verdict should accomplish the same purpose. In addition, plaintiffs who prevail in federal court may have no need to pursue their arbitrable claims because they will have already recovered their damages. Comment, *Arbitration of Investor-Broker Disputes*, 65 Calif.L.Rev. 120, 145–46 (1977). Or they may even settle those claims based upon the facts developed at their federal trials. All of these possibilities render the alleged inefficiency somewhat speculative.[13]

In any event, the efficiency argument has been rejected by this court in *C. Itoh & Co. v. Jordan International Co.*, 552 F.2d 1228 (7th Cir. 1977). In *Itoh*, we stated that

to permit a district court to deny a stay pending arbitration based on such discretionary considerations [of economy] would, in our opinion, frustrate the strong federal policy in favor of arbitration which is expressed in the Federal Arbitration Act . . . .

*Itoh*, 552 F.2d at 1231. *Itoh* involved a controversy containing both arbitrable and

---

**12.** Heinold has moved to stay arbitration of Counts II, III and IV in precisely this fashion.

**13.** Neither *Sibley* nor *Miley* stated their efficiency justification in terms of a need to protect the right to a judicial resolution of the federal claim. In theory, the additional burden posed by bifurcated proceedings could be so coercive that it would force plaintiffs to abandon their statutorily protected right to have a

judicial resolution of their securities claims by a post-dispute agreement to arbitrate the entire controversy. *See Wilko v. Swan*, 346 U.S. 427, 438, 74 S.Ct. 182, 188, 98 L.Ed. 168 (Jackson, J., concurring) (post-dispute agreement to arbitrate enforceable). Plaintiff has not attempted to make this argument in the instant case, however, and we need not consider whether it would be consistent with *Wilko*.

non-arbitrable issues. The district court had denied arbitration of an otherwise arbitrable issue because it believed that sound judicial administration required the resolution of the entire lawsuit in a single forum. *Itoh* rejected this reasoning, however, and held that the district court *must* allow arbitration of an issue when

> (1) the issue is one which is referable to arbitration under an agreement in writing for such arbitration, and (2) the party applying for the stay is not in default in proceeding with such arbitration.

*Itoh*, 552 F.2d at 1231.[14]

*Itoh* is also consistent with several provisions of the Arbitration Act. The Act itself provides for a bifurcated resolution of any controversy wherein a particular issue is subject to arbitration. *See* 9 U.S.C. § 3 (1976). Further, the Act provides only a very limited authority for a federal court to review the provisions of an arbitration agreement. The Act sets out the two defenses quoted above and states peremptorily that the district court "shall" enforce any agreement not subject to either of those defenses. 9 U.S.C. § 3 (1976). In contrast to *Itoh*, the decisions of the Fifth Circuit, in particular the decision in *Sibley*, seem not to have given appropriate weight to the federal policies embodied in the Arbitration Act.[15]

█ Plaintiff attempts to distinguish *Itoh* from the instant case in that *Itoh* ostensibly did not involve as high a degree of duplication between the arbitrable and non-arbitrable issues. But this distinction does not do justice to one of the central policies of the Federal Arbitration Act underlying *Itoh*. The Act was designed "to place arbitration agreements 'upon the same footing as other contracts.'" *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) (quoting H.R.Rep.No.96, 68th Cong., 1st Sess., 1, 2 (1924)); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S.Ct. 1801, 1806 n.12, 18 L.Ed.2d 1270 (1967). The Arbitration Act was specifically aimed at the historical problems of courts' refusing to honor contractual arbitration agreements. The Act was intended to make arbitration agreements specifically enforceable, *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 44, 64 S.Ct. 863, 864, 88 L.Ed. 1117 (1944), upon the terms established by the parties.[16] Accordingly, if the agreement provides for arbitration, the only issues open for the consideration of a federal court concern the "making of the agreement to arbitrate" itself. *Prima Paint*, 388 U.S. at 403, 87 S.Ct. at 1806 (quoting § 4 of the Arbitration Act). *Accord, Itoh*, 552 F.2d at 1231.

We must reject plaintiff's attempt to rest the resolution of each case upon the degree of intertwining to be discerned. In order for an arbitrable state law claim to be pendent to the securities claim for jurisdictional purposes, the evidentiary facts underlying those claims must be "derived from a common nucleus of operative fact[s]." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As such, the intertwining doctrine would always threaten to become the exception that swallowed the rule, allowing the presence of a non-arbitrable claim to

---

**14.** Under our rulings in parts I and II of this opinion, both of these prerequisites are satisfied.

*Itoh* has also always been understood to reject any efficiency defenses to arbitration agreements, *Barron v. Tastee Freez International, Inc.*, 482 F.Supp. 1213, 1215 (E.D.Wis.1980); *Schulman Investment Co. v. Olin Corp.*, 458 F.Supp. 186, 188–89 (S.D.N.Y.1978), although *Itoh* is not discussed in the *Miley* opinion.

**15.** "While the *Sibley* holding was well-intentioned, its effect was to deny one party the right to arbitrate a dispute pursuant to an express contractual agreement. This result has no statutory basis under the securities laws or the Arbitration Act." Krause, *Securities Litigation: The Unresolved Problem of Predispute Arbitration Agreements for Pendent Claims*, 29 De Paul L.Rev. 693, 715 (1980). *Accord* Comment, *Arbitration of Investor-Broker Disputes*, 65 Calif.L.Rev. 120, 145 (1977).

**16.** The Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1976).

force a trial on the otherwise arbitrable claims. The Fifth Circuit had attempted to deal with this problem by distinguishing between mere "factual intertwining" (in which arbitration would be preserved) [17] and the circumstance where the "same factual (and legal) conclusions must be drawn from the common evidentiary facts in order to resolve the federal and pendent state claims." *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 335–36 (5th Cir. 1981). This "distinction" does not adequately address the problem, however, at least in the present securities law context in which skillful pleading will always produce enough intertwining between state law fraud and misrepresentation claims and the non-arbitrable federal securities claim to defeat arbitration.[18]

Plaintiff's emphasis on efficiency would also elevate one purpose of the Arbitration Act, the promotion of speedy and efficient resolution of disputes, over the important goal of allowing technical disputes to be resolved by arbitrators with special expertise in the relevant area. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 415, 87 S.Ct. 1801, 1811, 18 L.Ed.2d 1270 (1967) (Black, J., dissenting); *Conticommodity Services Inc. v. Philipp & Lion*, 613 F.2d 1222, 1224 (2d Cir. 1980); Cohen and Dayton, *The New Federal Arbitration Law*, 12 Va.L.Rev. 265, 268 (1926). This latter goal is particularly important in the instant case where the arbitrable claims will require an assessment, *inter alia*, whether Heinold's pattern of trading, in light of constantly changing conditions in the options market, complied with the strategy restrictions embodied in plaintiff's contract. This is a question most easily and perhaps most accurately resolved by the Arbitration Committee of the options exchange itself.[19]

■ In summary, the Arbitration Act requires that we enforce the bargain of the parties as to dispute resolution and not substitute our own views of economy and efficiency. There is no room in the language of the Act, the decisions of the Supreme Court or the decisions of this court for an ad hoc approach, based on speculative considerations of efficiency toward enforcement of arbitration agreements. "[B]ifurcation of the federal and pendent state law claims is the only viable alternative under the present securities and arbitration acts." Krause, *Securities Litigation: The Unresolved Problem of Predispute Arbitration Agreements for Pendent Claims*, 29 De Paul L.Rev. 693, 716 (1980). We hold, therefore, that the district court may not refuse to enforce an agreement to arbitrate because of the joinder of a non-arbitrable claim, even when a bifurcated resolution may result in an assertedly inefficient or delayed resolution of the entire dispute.

REVERSED AND REMANDED.

---

**17.** This concession by the Fifth Circuit severely undercuts the stated efficiency rationale for its decision.

**18.** The divergent and inconsistent decisions examining the degree of intertwining also reflect the difficulty of this assessment, even if one accepts its validity. *Compare Miley*, 637 F.2d at 336–37, *with De Hart v. Moore*, 424 F.Supp. 55, 57 (S.D.Fla.1976), and *Macchiavelli v. Shearson, Hammill & Co.*, 384 F.Supp. 21, 30–31 (E.D.Cal.1974).

**19.** Admittedly, an initial judicial resolution of plaintiff's federal security law claim in Count I might, depending on the basis of its resolution, effectively decide those very questions best suited for the arbitrator's expertise. At the same time, it is possible to resolve Count I in several ways that would leave substantial matters for the arbitrators. At this point, however, whatever the interaction of the resolution of the claims, we are not able to overlook the important purpose of the agreement to provide arbitration by experts.