KNORR BRAKE CORPORATION,
Plaintiff,

v.

HARBIL, INC., et al., Defendants.

No. 81 C 6842.

United States District Court,
N.D. Illinois, E.D.

Feb. 9, 1983.

**490**

Richard M. Franklin, Baker & McKenzie, Chicago, Ill., for plaintiff.

James D. Lynch, Anthony G. Scariano, Anthony Scariano & Associates, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Knorr Brake Corporation ("Knorr Brake") originally sued Harbil, Inc. ("Harbil") and P.E.P. Industries, Ltd. ("P.E.P.") for rescission, breach of contract and injunctive relief based on their alleged breach of an agreement (the "Agreement") between Knorr Brake and Harbil.[1] This Court entered a preliminary injunction against Harbil and P.E.P. Harbil has now moved to vacate that injunction, to stay these proceedings and to compel arbitration under the Agreement. For the reasons stated in this memorandum opinion and order, Harbil's motion to vacate the preliminary injunction is denied, but its motions for a stay (except for any necessary en-

1. Under the Agreement Knorr Brake and Harbil undertook a joint venture to develop and market an air brake system for use on railway cars.

2. All dates referred to hereafter without year designations were in 1982, except that all the parties' recent memoranda (simply cited, for example, "Jan. 31 Mem.—") were written in 1983.

forcement of the preliminary injunction itself) and to compel arbitration are granted.

### Procedural History

Knorr Brake filed its Complaint December 8, 1981. This Court entered a December 9 temporary restraining order against Harbil and P.E.P. and promptly (on December 14 and 18) conducted a hearing on Knorr Brake's motion for a preliminary injunction. At the December 14 hearing Harbil's counsel moved orally for a stay pending arbitration pursuant to Agreement ¶ 7:

Any dispute arising pursuant to this Agreement shall be submitted to arbitration by the American Arbitration Association, and in accordance with their rules and procedures, and interpreted under the laws of the State of New York.

Ruling on that motion was reserved pending resolution of the motion for preliminary injunction (Dec. 14, 1981 Tr. 10).

This Court's January 28, 1982[2] memorandum opinion and order ("Opinion I") reflected its findings of fact and conclusions of law, as required by Fed.R.Civ.P. ("Rule") 52(a), granting Knorr Brake's preliminary injunction motion. Next the preliminary injunction itself was issued February 22, contemporaneously with a supplemental memorandum opinion.

On that same day Harbil filed its Answer and a Counter-Complaint against Knorr Brake and its corporate parent, Knorr-Bremse GmbH ("Knorr-Bremse") (collectively "Knorr"). Harbil's Answer did not raise the arbitration issue by affirmative defense or otherwise.

In April Knorr moved to dismiss Harbil's Counter-Complaint under Rule 12(b)(6).[3] In May Harbil filed its brief in opposition to Knorr's motion, supporting its memorandum with affidavit and documentary evi-

3. Knorr Brake so moved in mid-April, and Knorr-Bremse joined in the motion at the end of April. Knorr-Bremse also moved to dismiss under Rules 12(b)(5) and 12(b)(2). By its May 12 order this Court suspended briefing on Knorr-Bremse's process and jurisdiction motions.

dence. In June, after receipt of Knorr's reply memorandum, this Court indicated Harbil's having raised matters outside the pleadings might warrant treatment of Knorr's Rule 12(b)(6) motion as one for summary judgment under Rule 56. Accordingly Knorr and Harbil were respectively granted leave to file affidavits and further affidavits.

In August Harbil filed its First Amended Counter-Complaint, together with a motion to join additional counterdefendants and a motion to continue ruling on Knorr's Rule 12(b)(6)–Rule 56 motion. This Court established a briefing schedule for the first of those motions and took the second under advisement.

This Court's October 27 memorandum opinion and order denied Harbil's motion to join additional counter-defendants and struck Count V of the First Amended Counter-Complaint. 550 F.Supp. 476 (N. D.Ill.1982). As a sequel to that episode this Court's January 20, 1983 memorandum opinion and order (556 F.Supp. 484, at 487–88) granted Knorr's motion for an assessment under 28 U.S.C. § 1927 against Harbil's original counsel in the amount of "the excess costs, expenses, and attorneys' fees reasonably incurred" by Knorr because of Harbil's joinder motion.

On January 14, 1983 Harbil's newly-retained counsel filed the present motion, contending:

1. Agreement ¶ 7 clearly encompasses the dispute between Knorr Brake and Harbil. Jan. 14 Mem. 5–7.

2. Harbil has not waived its right to arbitration. *Id.* at 7–8.

3. Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 ("Section 3"),[4] and applicable case law so limit this Court's jurisdiction over this arbitrable dispute that even the preliminary injunction

must be vacated. Jan. 31 Supp.Mem. 2–5.

Knorr retorted:

1. Harbil has waived any right to invoke arbitration. Jan. 31 Mem. 2–10.

2. Arbitration must be denied because some parties to this action are not bound by the Agreement. *Id.* at 10–11.

3. This action's intertwining of arbitrable matters and non-arbitrable equitable issues makes this Court the only appropriate forum for resolution of the dispute. *Id.* at 11–15.

*Waiver*

■ Knorr do not dispute (1) Agreement ¶ 7 covers Knorr Brake's quarrel with Harbil and (2) Section 3 would ordinarily require this Court to stay trial of this action pending arbitration of "any issue referable to arbitration" under the Agreement. Rather Knorr argue vigorously Harbil waived its right to arbitration. Those opposing contentions must be looked at in light of the strong federal policy favoring enforcement of arbitration agreements between knowledgeable business people.

Our Court of Appeals has recently taught (*Dickinson v. Heinold Securities, Inc.,* 661 F.2d 638, 641 (7th Cir.1981) (citations and footnote omitted)):

While arbitration is a waivable contract right, ... a "waiver of arbitration is not lightly to be inferred." ... The essential question is whether, under the totality of the circumstances, the defaulting party acted " 'inconsistently' with the arbitration right."

Knorr contend (Jan. 31 Mem. 5–9) several facts point to Harbil's having waived its right. There is force to some of Knorr's arguments, but none is compelling in the totality of the circumstances.

---

4. Section 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

True, Harbil did not raise the arbitration issue either in its briefs on Knorr Brake's preliminary injunction motion or in its Answer to the Complaint. However, this Court had effectively severed the arbitration issue from the preliminary injunction matter when Harbil first moved for a stay pending arbitration at the December 14 hearing. And Harbil's having asserted its right to arbitration *before* filing its Answer surely lessens the import of its not reasserting the same right *in* the Answer.

Although our Court of Appeals once found a waiver in a party's filing an answer on the merits, *Galion Iron Works & Manufacturing Co. v. J.D. Adams Manufacturing Co.*, 128 F.2d 411, 413 (7th Cir.1942), it has more recently said that result should not be followed "rigidly or mechanically." *Midwest Window Systems, Inc. v. Amcor Industries, Inc.*, 630 F.2d 535, 537 (7th Cir.1980). It would certainly be rigid to attribute a waiver to Harbil's Answer itself, for Harbil might reasonably have believed its December 14 oral motion had effectively preserved its position as to arbitration. *Cf. Clar Productions, Ltd. v. Isram Motion Pictures Production Services, Inc.*, 529 F.Supp. 381, 383 (S.D.N.Y.1982) (no waiver where defendant raised its right to arbitration seven months after suit was commenced but before discovery and before any response on the merits).

Nor is there merit to Knorr's claim (Jan. 31 Mem. 7) Harbil's use of the discovery process in and of itself points toward waiver. In *Midwest Window*, 630 F.2d at 537, our Court of Appeals indicated in dictum a party's extensive use of discovery might constitute waiver *if* the discovery had resulted in prejudice to the opposing party. Indeed *Midwest Window, id.* teaches a showing of prejudice is integral to a holding of waiver:

> The waiver of the right to arbitration cannot be determined by the application of some inflexible rule. All of the circumstances, of which prejudice should be one, must be considered in the context of the particular case.

And such prejudice was actually found in the district court case cited by Knorr for the proposition a party's use of discovery indicates waiver. *See Ging v. Parker-Hunt, Inc.*, 544 F.Supp. 49, 54–55 (W.D.Pa.1982).

■ By contrast Knorr's claims of prejudice (Jan. 31 Mem. 8–9) are singularly unconvincing:

1. Their contention this action will proceed more quickly than arbitration ignores the fact the case is, despite (or perhaps because of) all the intervening motions and opinions, at an early stage of the litigation process. From this Court's commercial arbitration experience (both as an arbitrator and as counsel) before taking the bench, resolution through arbitration will provide a far speedier remedy than this Court's trial calendar would afford.

2. There is every reason to believe Knorr's participation in discovery (a) will be as valuable to them in arbitration as in a trial and (b) has been no more burdensome on them than any need to prepare for arbitration.

3. Similarly Knorr's efforts to dismiss Harbil's Counter-Complaint will certainly be of value in resolving the arbitrable issues between Knorr Brake and Harbil.

4. Knorr have been awarded costs and expenses in connection with opposing Harbil's ill-considered joinder motion.

At bottom Knorr's claim of prejudice amounts to a charge time has been lost in these proceedings. But mere delay without indicated prejudice to Knorr is not enough to show a waiver. *See Dickinson,* 661 F.2d at 641.

More troublesome for Harbil are two other factors identified by Knorr (Jan. 31 Mem. 6–7): Harbil's filing of its Counter-Complaint (and its First Amended version thereof) and its conversion of Knorr's Rule 12(b)(6) motion into a summary judgment motion. Unlike Harbil's preliminary injunction memoranda, its Answer and even its participation in discovery, Harbil's counterclaim maneuvers were essentially offensive rather than defensive in character.

But again the situation may profitably be contrasted with that in *Midwest Window,* where the defendant was held to have waived its right to arbitration by commencing and prosecuting to judgment an earlier state court action that had prejudiced the plaintiff. 630 F.2d at 537. Here no such prejudice flowed from the *filing* of Harbil's counterclaim. It would be every bit as rigid and mechanical to find waiver in a counterclaim per se as in an answer per se. *See also Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir.1972) ("Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver").

Moreover it is not clear a Harbil victory on "its" summary judgment motion would have eliminated the arbitrable claims in Knorr Brake's Complaint, so that Harbil's going for a knockout punch on one set of issues does not necessarily reflect abandonment of its right to arbitration on the others. Note that in *Dickinson,* 661 F.2d at 641–42, our Court of Appeals found defendant had not waived its right to arbitration despite its having moved for summary judgment on plaintiff's nonarbitrable claim.

Even if Harbil's counterclaim and surrounding tactics are viewed as pointing toward waiver, they must still be appraised as part of a total picture. After all Knorr Brake and Harbil did voluntarily enter into an arbitration clause that clearly embraces their current dispute.[5] Indeed that dispute, involving as it does many issues of industry and international trade usage and custom, suggests arbitration as the likely source of the expertise needed to resolve it. And as said at the beginning of this section, contrary to Knorr's assertion (Jan. 31 Mem. 9), public policy strongly favors enforcement of arbitration agreements. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510–11, 519, 94 S.Ct. 2449, 2452–2453, 2457, 41 L.Ed.2d 270 (1974); 9 U.S.C. § 2.

To all those general factors must be added the facts (1) Harbil moved promptly for a stay pending arbitration and (2) Knorr have been unable to identify how they have been prejudiced by these proceedings, commenced after all by Knorr Brake. This Court has no difficulty concluding Harbil, in the totality of the circumstances, has not acted " 'inconsistently' with the arbitration right." *Dickinson,* 661 F.2d at 641.

### Non-Parties to the Agreement

Knorr contend (Jan. 31 Mem. 10–11) arbitration is inappropriate because neither Knorr-Bremse nor P.E.P. is a party to the Agreement. Though that is true as a formal matter, it is clear (1) all the issues in this dispute involve the rights and obligations of Knorr Brake and Harbil under the Agreement, (2) those rights and obligations are arbitrable and (3) the *results* of arbitration will impact conclusively on Knorr-Bremse and P.E.P.[6]

Knorr's contention as to Knorr-Bremse and P.E.P. makes sense only if it were presupposed the preliminary injunction will be vacated upon entry of a stay pending arbitration. In that event Knorr might legitimately be concerned P.E.P. would not be bound by this Court while arbitration proceeded. As the next section reflects, Knorr's worry on this score is unfounded.

---

**5.** Under Agreement ¶ 7 the parties adopted the American Arbitration Association ("AAA") Commercial Arbitration Rules, Paragraph 47(a) of which provides:

No judicial proceedings by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

Although Harbil does not contend adoption of the AAA Rules settles the question of its non-waiver, it is correct if it means to suggest Knorr Brake's adoption of Rule ¶ 47(a) is another factor to be weighed in the scales.

**6.** Knorr-Bremse (though not a contracting party) approved the Agreement. Jan. 31 Mem. 10 n. **. P.E.P. is a closely-allied entity brought in by Harbil to provide the expertise Harbil was obligated to provide under the Agreement. Opinion I at 5–6 & n. 4. Knorr-Bremse and P.E.P. are surely in privity with the contracting parties, with all the legal consequences that flow from that status.

*Injunctive Relief and Issues Referable to Arbitration*

Knorr argue (Jan. 31 Mem. 11–15) their equitable claims, intertwined with their contractual claims, render their dispute with Harbil and P.E.P. inappropriate for arbitration. But the cases they cite deal with the easily distinguishable situation where separate *claims* in a lawsuit are specifically identified as nonarbitrable and the issue is whether those nonarbitrable claims are so interwoven with arbitrable claims that arbitral resolution of the latter should not be compelled—what has been termed the "permeation" doctrine. *See, e.g., University Life Insurance Co. of America v. Unimarc Ltd.*, 699 F.2d 846, 850 (7th Cir. 1983). In this action, on the other hand, there is really only one claim—a contract claim—and Knorr seek multiple legal and equitable *remedies.*

For its part Harbil contends (Jan. 31 Supp.Mem. 4) this Court "must stay its hand" because the underlying dispute is clearly arbitrable and therefore *no* action by this Court is warranted. That position is the polar opposite of Knorr's.

 As is often the case, the truth lies between the contending positions: Stay pending arbitration of the issues "referable to arbitration" does not divest this Court of its equitable jurisdiction. Section 3's very language confirms this conclusion, for it speaks of "stay[ing] the trial" of an action until the arbitration of "any issue referable to arbitration under an agreement." That language clearly implies the retention of jurisdiction, and it in no way suggests this Court may not act to preserve the status quo pending arbitration. It also speaks of arbitrating *issues,* not *cases*—another factor supporting a separate look at the issue of injunctive relief.

As Opinion I at 14–16 made clear, Knorr Brake had adequately demonstrated it would suffer irreparable harm were Harbil and P.E.P. not enjoined from making use of any components or technical know-how developed in the Knorr-Brake-Harbil joint venture. Thus, although the underlying contractual issues here are clearly arbitrable, Knorr Brake properly sought a preventive remedy available only from a court. *See Klockner-Humboldt-Deutz v. Hewitt-Robins Division,* 486 F.Supp. 283, 284 n. 1 (D.S.C.1978); *see also Clar Productions,* 529 F.Supp. at 382–83. Because preliminary injunctive relief would not be available in arbitration, the issue raised by Knorr Brake's prayer for a preliminary injunction is really not "referable to arbitration" within the meaning of Section 3. In effect the preliminary injunction merely preserves the jurisdiction of the arbitrator during arbitration, just as it would preserve the jurisdiction of this Court were the underlying dispute to be tried by this Court rather than in arbitration.

*Conclusion*

Harbil's motions to stay this action (except to the extent, if any, needed to enforce the preliminary injunction) and to compel arbitration are granted. Harbil's motion to vacate the preliminary injunction is denied, and that injunction shall remain in effect until further action by this Court.