Virginia SPECK, Plaintiff,

v.

**OPPENHEIMER & CO., INC., Albert Rossini, and Peggy Plennert, Defendants.**

No. 83–0821–CV–W–3.

United States District Court, W.D. Missouri, W.D.

March 23, 1984.

Ronald J. Stites, Kansas City, Mo., for plaintiff.

Christine L. Schlomann, Kansas City, Mo., for defendants.

## OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

At issue is the motion of the defendants to sever portions of two counts, send all claims not based on federal law to arbitration, and stay the arbitration pending resolution of the federal law claims. Defendants argue that the United States Arbitration Act mandates arbitration of the non-federal law claims in this instance. Plaintiff retorts that Missouri law applies and that under it the arbitration agreements involved here are not binding. Further, the plaintiff challenges the severance sought.

The pleadings provide the following sketch of the relationship between the parties. In early 1980, Albert Rossini, one of the defendants and a registered securities broker/dealer with Oppenheimer & Co.,

Inc., (another defendant), approached the plaintiff about opening an account with Oppenheimer. In February of 1980, the plaintiff opened a cash account with Oppenheimer. In the process of opening her account and during her business relationship with the defendants the plaintiff entered into a "Signature Record and Cash Agreement" in February of 1980, two "Customer Agreement—Consent to Loan Securities" on February 26, 1980, and March 20, 1980, and a "Client's Option Agreement" on March 19, 1980. Each of these agreements contained an arbitration clause.[1] When the plaintiff lost money on her account she sued Oppenheimer, Rossini, and Peggy Plennert, another registered securities broker/dealer with Oppenheimer.

Mrs. Speck set out her complaints in six counts against the defendants. In count I the plaintiff alleged that the defendants, acted recklessly and without regard for plaintiff's investment interest and only in their own interest in the way they handled her account, and that the defendants' behavior was fraudulent and deceitful all in violation of section 17(a) of the Securities Act of 1933, and sections 10(b) and 15(c)(1) of the Securities Exchange Act of 1934, and rules 10b–5 and 15C1–2 promulgated thereunder. On the same basis count II alleges a violation of section 409.101, Mo. Rev.Stat. The plaintiff, in count III, claims that the defendants made material misrepresentations to her and failed to disclose material facts to her concerning a specific set of transactions in contravention of section 10(b) of the Securities Exchange Act of 1934 and Rule 106–5. Count IV contains a charge of breach of the fiduciary relationship that existed between the defendants and Mrs. Speck. In count V, the plaintiff alleges that she reasonably relied on knowing, fraudulent misrepresentations made by the defendants contrary to the common law. Finally, count VI maintains that the defendants were negligent, that their acts *in toto* represent a breach of the duty of due care owed to plaintiff by them. Counts IV through VI also seek punitive damages.

Defendants want to have arbitrated all of counts II, IV, V, and VI. They also maintain that counts I and III contain com-

---

1. The fourth paragraph of the cash agreement contains the arbitration provision. It states:

> Any difference between us with respect to my account or any transaction shall be submitted to arbitration in New York City under the Rules of the New York Stock Exchange, Inc. (except that I may elect by written notice sent to you within 3 days from the date such difference arises to arbitrate under the Rules of the National Association of Securities Dealers, Inc.) and notices in connection therewith may be sent to me by ordinary mail and personal service thereof is waived and the decision of such arbitrations shall be binding and final.

The margin agreements contain the following arbitration provision in paragraph 16.

> ... Any controversy between you and the undersigned arising out of or relating to this Agreement, or the breach thereof, or arising out of transactions with you shall be settled by arbitration, in accordance with the Rules then obtaining of either the National Association of Securities Dealers, Inc. or of the New York Stock Exchange, as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after receipt of notification from you requesting such election, then you may make such election. Any arbitration hereunder shall be before at least three arbitrators, and the award of the arbitrators or a majority of them shall be final, and the judgment upon the award rendered may be entered in any court having jurisdiction. Defendants agree that notice of, and in any such arbitration may be sent to me by mail and waive personal service thereof.

Finally, the options agreement's arbitration provision is found in paragraph six. It states that:

> ... Any controversy arising out of or relating to the account of the undersigned, to transaction with you for the undersigned or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the National Association of Securities Dealers, Inc. or the Board of Governors of the New York Stock Exchange or the American Stock Exchange as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within 5 days after demand by you that the undersigned make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

mon law claims of respondeat superior and implied claims under the rules of the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD) as well as federal law claims. The defendants believe that the United States Arbitration Act applies and requires arbitration of the claims not based on federal law.

Arbitration

■■■ Plaintiff suggests that arbitration is improper in this action. She argues that the claims not based on federal law are pendent claims, that the law of the forum should be applied to pendent claims to avoid forum shopping,[2] and that the law of the forum, Missouri, does not sanction compulsory arbitration.

The Court does not have to reach the question of whether Missouri law would allow or require arbitration since it finds that Missouri law is not applicable.[3] The United States Arbitration Act, Title 9 U.S.C. § 1 *et seq.*, "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Section two of the Act creates "a body of federal law" that applies to any arbitration agreement that falls un-

der the Act. *Id.* Under section two, and pertinent to this case, if an arbitration provision is in writing and in a contract that involves interstate commerce, then the provision is binding on the parties. 9 U.S.C. § 2. The agreements between Mrs. Speck and the defendants satisfy both requirements. All four agreements are in writing and contain an arbitration provision. Each agreement, involving the purchase and sale of securities, also satisfies the commerce requirement. *See Wilko v. Swan*, 346 U.S. 427, 430, 74 S.Ct. 182, 184, 98 L.Ed. 168 (1953). The Court finds that all four agreements fall under the Act.

■■■ Having determined that federal law governs the arbitration provisions and that the provisions are binding, the next step is usually to decide whether the dispute is covered by the arbitration provisions.[4] The plaintiff, however, does not challenge the scope of the provisions or argue that her claim is outside their reach. The Court does note, though, that the arbitration provisions here are broad and coupled with the liberal federal policy favoring arbitration, concludes that the present dispute is arbitrable. As recognized by the defendants the United States Arbitration Act, even when it does apply, does not reach all claims that would appear on their face to come within the arbitration provisions. Claims that allege violations under the federal securities laws are not arbitra-

---

**2.** The plaintiff reasons that if the nonfederal law based claims were brought in state court or in a diversity action in federal court the law of the forum would apply. To avoid forum shopping between federal and state court or between federal question or diversity jurisdiction the forum's law should also apply to pendent claims.

**3.** The plaintiff cited *State ex rel. Geil v. Corcoran*, 623 S.W.2d 557 (Mo.App.1981) along with Mo.Rev.Stat. §§ 435.460 and 435.010 in support of her position that Missouri courts would not enforce the arbitration provisions of the agreements between herself and the defendants. The Court notes, however, Missouri's recent codification of the Uniform Arbitration Act, Mo.Rev. Stat. § 435.350. The effect this more liberal statute may have on the state of arbitration law in Missouri remains to be seen. No cases attempting to harmonize or explain the interface of these statutes has come to the Court's attention.

**4.** Plaintiff asserts that the agreements with the defendants were all adhesion contracts. She cites the fact that all were form arguments, all contained the provision on the reverse or subsequent side, and all were not legible when copied.

The Court disagrees with the plaintiff. Based on the information available to the Court at this writing. The Court discerns no evidence that the agreements were adhesion contracts. The arbitration provisions do not indicate a fundamental unfairness to the plaintiff. The provisions do not place the plaintiff in an inferior position *viz a viz* the defendants. To find as the plaintiff would have this Court find, without more, would in effect render all existing form contracts between brokerage houses and unsophisticated lay persons, as the plaintiff claims herself to be, invalid.

ble. *Id.* at 434–35, 438, 74 S.Ct. at 186–87, 188. Counts I and III of the plaintiff's complaint allege such violations. The defendants believe, though, that the counts also state a common law respondeat superior claim and an implied claim under rules of the NYSE and NASD. The Court has reviewed those two counts carefully and does not find any justification for splitting them. On their face each merely alleges a violation of the federal securities laws. The Court, therefore, will only send to arbitration counts II, IV, V, and VI which do involve state statutory and common law.[5]

Stay

The second issue for resolution is whether to stay further proceedings in front of this Court, the arbitration proceedings or neither. The defendants desire the Court to stay the arbitration proceedings pending the resolution of the remaining federal claims. The plaintiff does not take a position.

There are two competing interests present in this issue. One, is the federal policy that favors arbitration as a speedy, economical alternative to litigation. See *Cone Memorial Hosp. v. Mercury Construction,* 103 S.Ct. at 941; *Wilko v. Swan,* 346 U.S. at 438, 74 S.Ct. at 188. To stay the arbitration would eliminate the advantage of quickness. Moreover, section three of the Act requires a court at the direction of either party to stay the trial of an action pending arbitration once it is satisfied that the issue upon which the suit is brought is arbitrable. 9 U.S.C. § 3.

The competing interest is set out in *Wilko.* In that case the Supreme Court refused to apply the United States Arbitration Act to violations arising under the federal securities laws, even though the violation arose out of a transaction covered by an arbitration provision within the Act. The Court found to rule, otherwise, would be contrary to section fourteen of the Securi-

ties Act. Section fourteen declares as void any condition, stipulation or provision that would bind a person acquiring a security to waive compliance with any provision of the Securities Act. The Court reasoned that the Securities Act was enacted to protect the investor, and one protection is his inability to waive any of his rights created by the Securities Act, including the right to a federal forum. *Wilko v. Swan,* 346 U.S. at 435, 438, 74 S.Ct. at 186, 188. The Court believed that the federal forum was advantageous to the investor. *Id.* at 435–36, 74 S.Ct. at 186–87. To give credence to the Arbitration Act and enforce the arbitration clause would diminish this protection.

 This Court believes that the reasoning of *Wilko* also applies in this case and warrants staying the proceedings in arbitration. To allow the proceedings on the federal law claims to go forward effectuates the policy of having a federal forum open to investor/plaintiffs who believe they have been wronged by broker/dealers. On the other hand, the advantages of speed and economy available if the arbitration proceeds and the federal action is stayed, are not advantages if the cost is diminished protection for the investor. Besides any application of collateral estoppel from the federal action would serve to shorten and make more economical the arbitration proceeding. Finally, the Court does not view it as appropriate to allow both proceedings to go forward unabated. Then the dichotomous action becomes a race, with each party pushing the proceeding it believes offers an advantage and delaying the other. Lost is the advantage of economy. Since collateral estoppel would apply, lost also could be the opportunity to litigate in a federal forum.

 The plaintiff maintains this policy could be effectuated simply by following the "doctrine of intertwining." The doctrine, followed in the Fifth Circuit, "was formulated as an exception to the require-

---

5. If the defendants truly believe there are hidden common law and other nonfederal law based claims lurking in counts I and III they may brief the Court again. If another brief is forthcoming it should specifically cite to the allegations contained in the counts that taken together or separately raise arbitrable claims.

ment that arbitrable claims be referred to arbitration in order to preserve the exclusive jurisdiction of the federal courts in areas where such exclusivity exists." *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 335 (5th Cir.1981). In *Miley* the court affirmed the decision of the lower court not to order arbitrated a claim of breach of fiduciary duty. The lower court, instead, tried the claim along with claimed violations of the federal securities laws. The appeals court reasoned that to order arbitration on the common law breach claim would be inefficient. First, since a violation of the federal securities laws would usually also satisfy the standard for a breach of fiduciary duty, there would be no reason for another proceeding. Further, the cost of the arbitration proceeding probably would cause the plaintiff not to pursue arbitration after the federal court action, thereby undercutting the purposes of pendent jurisdiction. *Id.* at 336–37.

The doctrine of intertwining has been rejected by other circuits. The Seventh Circuit recognized two justifications advanced by *Miley* for applying the doctrine and rejected them both. The first, ensuring the exclusivity of federal jurisdiction over federal securities law violations does not justify denying arbitration to arbitrable claims. Rather, it can be achieved by staying the arbitration proceeding pending resolution of the federal law claim. *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir.1981). *See also Lee v. Ply*Gem Industries, Inc.*, 593 F.2d 1266, 1275 (D.C.Cir.), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). The stay avoids any collateral estoppel limitations that might interfere with the federal court's ability to decide the non-arbitrable federal issues. *Dickinson v. Heinold Securities, Inc.*, 661 F.2d at 644. The second justification, efficiency, also did not warrant denying arbitration. Any duplication caused by having to proceed in two forums is not sufficient reason to deny the right to arbitrate. Besides the duplication could be kept to a minimum through the use of collateral estoppel. Moreover, a prevailing plaintiff in federal court may not perceive a

need to proceed with arbitration or the parties might settle after the federal court decision. *Id.* at 644. Finally, to rule with the plaintiff, would place efficiency over the goal of the Arbitration Act of having arbitrators with expertise decide the technical issues presented. *Id.* at 646. Although, the federal court may end up deciding some issues better left to arbitrators, this does not justify completely denying their expertise to the party requesting arbitration. *Id.* at 646 n. 19.

The position taken by the *Dickinson* court was recently followed in the Sixth Circuit. The court analyzed the opinion and criticisms of it raised by a district court in California, *Cunningham v. Dean Witter, Reynolds, Inc.*, 550 F.Supp. 578 (E.D. Cal.1982), and concluded that the *Dickinson* analysis "strikes the proper balance between the competing policies in the Arbitration Act and the Securities Exchange Act of 1934." *Liskey v. Oppenheimer & Co.*, 717 F.2d 314, 320 (6th Cir.1983). The Sixth Circuit concluded, that notwithstanding some duplication, the agreement of the parties to arbitrate should be enforced. *Id.* at 320.

This Court agrees with the *Liskey* court's view that ordering arbitration and then staying the proceeding pending resolution of the non-arbitrable federal claims is the proper way of effectuating the policies underlying the *Wilko* decision and the United States Arbitration Act. The Supreme Court's recent decision in *Cone Memorial Hospital* leads credence to this position. In *Cone*, the Hospital complained that if arbitration was ordered then it would probably have to litigate in two forums because only one of the two parties against it was bound to arbitrate. The Court responded that "the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Cone Memorial Hospital v. Mercury Construction Corp.*, 103 S.Ct. at 939. Although, *Cone* involved separate parties rather than separate claims the rule announced would still seem to apply to the latter as well as to the former.

Accordingly, the Court

ORDERS the motion of the defendants to compel arbitration be and hereby is granted in part. The parties are to proceed to arbitration on counts II, IV, V, VI. The Court further

ORDERS that the arbitration proceedings just ordered be stayed pending the outcome of the proceedings before this Court on counts I and III.